```
               IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF KANSAS


KIMBERLY IBARRA,                )
                                )
                Plaintiff,      )
                                )
vs.                             )    Case No. 06-1257-MLB
                                )
MICHAEL J. ASTRUE,[1]           )
Commissioner of                 )
Social Security,                )
                                )
                Defendant.      )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

1

as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II. History of case**

On February 8, 2006, administrative law judge Michael R.

Dayton issued his decision (R. at 18-29).  Plaintiff alleged disability beginning February 25, 2002 (R. at 18).  For purposes of disability insurance benefits, the ALJ determined that plaintiff remained insured through June 30, 2003 (R. at 19, 20). At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 25, 2002 (R. at 20). At step two, the ALJ found that plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease-lumbar spine (as of March 2004), right carpal tunnel syndrome (as of January 2005), obesity, bipolar disorder by history, depressive disorder NOS, and anxiety disorder NOS (R. at 21).  At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 23).  After establishing plaintiff's RFC (R. at 24-25), the ALJ found at step four that plaintiff could perform past relevant work of housekeeping supervisor and laundry supervisor prior to March 16, 2004.  As of March 16, 2004 ,the ALJ further found that plaintiff could no longer perform past relevant work (R. at 27).  At step five, the ALJ found that, based on vocational expert (VE) testimony, that plaintiff (on and after March 16, 2004) could perform a significant number of other jobs that exist in the national economy (R. at 28).  Therefore, the ALJ concluded that plaintiff was not disabled.

**III.  Did the ALJ err in his analysis of the opinions expressed**

**by Dr. Linda Bean, plaintiff's treating physician?**

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must then

give specific, legitimate reasons for doing so.  <u>Watkins</u>, 350 F.3d at 1301.

On February 10, 2005, Dr. Bean filled out a five page fibromyalgia residual functional questionnaire regarding the plaintiff (R. at 271-275).  Dr. Bean had been treating plaintiff since January 2004.  Dr. Bean indicated that plaintiff's impairments included fibromyalgia, lumbar radiculopathy, and carpal tunnel syndrome (R. at 271).  Dr. Bean indicated that emotional factors contribute to the severity of plaintiff's symptoms and functional limitations (R. at 272).  Dr. Bean noted that plaintiff experienced drowsiness due to her medication which might have implications for working.  Dr. Bean opined that plaintiff would likely be moderately limited due to her symptoms. Dr. Bean indicated that plaintiff could sit for less than 2 hours continually, and could stand/walk for about 2 hours continually. Dr. Bean further indicated that plaintiff would need to be able to walk during an 8-hour day, and would need to be able to shift positions at will from sitting, standing, or walking (R. at 273). Dr. Bean stated that plaintiff could frequently lift 10 pounds, and occasionally lift 20 pounds.  Dr. Bean also indicated that plaintiff had limitations in her ability to reach, handle and finger (R. at 274).  Finally, Dr. Bean opined that plaintiff would, on average, miss work more than 3 times a month due to her impairments and treatment (R. at 275).

7

The ALJ discussed Dr. Bean's opinions as follows:

> As for the opinion evidence, the undersigned does not give controlling weight to the opinion of Dr. Bean because her opinion is not consistent with the evidence. Dr. Bean gives an opinion of the claimant's functional limitations which is not supported by the medical evidence (Exhibit 7F). It is documented that Dr. Bean did not begin treating the claimant until January 26, 2004, well after the claimant's alleged onset date of disability and the date last insured. Additionally, on March 16, 2004, Dr. Bean documented that the claimant gets relief from pain with medication. (Exhibit 5F-43) A lumbar MRI performed of the claimant on March 16, 2004, was unremarkable. (Exhibit 6F-49) A bilateral EMG nerve conduction study of the upper extremities suggested a right median neuropathy across the carpal tunnel, which was considered electrophysiologically mild in severity, with no evidence of radiculopathy. (Exhibit 7F-54)
>
> As aforementioned in this decision, the claimant's activities are inconsistent with Dr. Bean's opinion of the claimant's functional limitations. The claimant is active with her grandchildren, pet, and performs household chores. The claimant has also worked after her alleged onset date of disability. The record documents that with medication and physical therapy, the claimant's symptoms of pain improved. (Exhibits 5F-45, 47, 6F).

(R. at 26-27). The court will examine the specific reasons provided by the ALJ for not giving controlling weight to Dr. Bean's opinions.

The ALJ indicated that Dr. Bean did not begin treating the plaintiff until January 26, 2004, well after plaintiff's alleged onset date of disability (February 25, 2002) and the date last

insured (June 30, 2003). However, in this case, plaintiff has not only applied for disability insurance benefits, but also for supplemental security income. Therefore, even if she was not found to be disabled on or before June 30, 2003, and therefore not eligible for disability insurance benefits, she would still be eligible for supplemental security income if she was found to be disabled after June 30, 2003. The opinions of Dr. Bean are clearly relevant to the issue of whether plaintiff was disabled from January 2004, when Dr. Bean began treating the plaintiff, to February 2005, when Dr. Bean offered her opinions regarding plaintiff's limitations.

    Second, the ALJ discounted Dr. Bean's opinions because the medical records of March 16, 2004 "documented that the claimant gets relief from pain with medication" (R. at 26), and later indicated that the medical records showed that, with medication and physical therapy, plaintiff's symptoms of pain improved (R. at 27). In fact, the medical record of March 16, 2004 cited to by the ALJ (5F-43) is a treatment record from Dr. Bean which states the following: "Patient has taken some Darvocet and Motrin 800 mg. which seems to relieve the pain somewhat" (R. at 252). Dr. Bean's treatment notes from March 23, 2004 indicate that plaintiff "has been using Darvocet and Motrin with some mild relief" (R. at 251). Therefore, these medical treatment records indicate that the pain medication was only providing mild or some

9

relief from the pain. Another treatment record cited to by the ALJ (5F-45), which is also from Dr. Bean, stated that plaintiff has been in physical therapy and plaintiff feels it is helping (R. at 250). Dr. Bean, who is the source of these treatment notes, nonetheless concluded that plaintiff had the limitations that she [Dr. Bean] set forth in her report.

Furthermore, the ALJ did not cite to any medical source who provided an opinion that the treatment notes indicating that pain medication provided mild or some relief, or that physical therapy helped the plaintiff, contradicted Dr. Bean's opinion regarding plaintiff's limitations. See Shontos v. Barnhart, 328 F.3d 418, 426-427 (8th Cir. 2003). An ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors. Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004). The ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002). In the absence of any medical evidence to support the ALJ's assertion that the treatment notes are inconsistent with the opinions of Dr. Bean, the ALJ overstepped his bounds into the province of medicine. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996).

Third, the ALJ stated that a lumbar MRI performed on the plaintiff on March 16, 2004 was "unremarkable" (R. at 26). The MRI report of March 16, 2004 does indicate that some of the findings (T12-L1, L1-2, L2-3, L3-4) were unremarkable. However, the ALJ failed to mention that the report also indicated disc desiccation at L4-5 with minimal broad-based disc osteophyte complex with a disc bulge, and disc desiccation at L5-S1 with a disc bulge which causes some moderate right lateral recess narrowing and impinges at the origin of the right S1 nerve root (R. at 268-269). The ALJ has misstated the evidence by not fully and accurately disclosing the contents of the March 16, 2004 MRI report. An ALJ is not entitled to pick and choose from a medical report, using only those parts that support the ALJ's conclusion, while ignoring those parts that would not support the ALJ's conclusion. See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

Fourth, the ALJ notes that a bilateral EMG nerve conduction study of the upper extremities suggested a right median neuropathy across the carpal tunnel, which was considered mild in severity with no evidence of radiculopathy (R. at 26-27). However, this medical report is actually part of Exhibit 7F, which is the fibromyalgia residual functional questionnaire prepared by Dr. Bean. Dr. Bean cites to this medical report in the questionnaire, indicating that it is one of the clinical

11

findings, laboratory and test results which show plaintiff's medical impairments (R. at 271). The ALJ cites to no medical opinion indicating that this test result does not support the limitations set forth by Dr. Bean. Again, the ALJ has erroneously substituted his own medical opinion for that of the disability claimant's treating doctor without any medical support for his determination.[2]

Finally, the ALJ contends that the opinions of Dr. Bean are inconsistent with plaintiff's daily activities, which include being active with her grandchildren, pet, and performing household chores (R. at 27). The ALJ had previously found that plaintiff's activities of daily living are "basically normal" and noted that as of December 14, 2004, plaintiff was chasing dogs as well as her grandchildren (R. at 25). However, the actual medical report of December 14, 2004, states the following:

> She says she has a lot of stress in her life, has 12 teenagers and one 7 month old at home...She has also noticed some substernal[3] pressure, cramping pain in the middle of substernal area which goes away when she lies down. Comes in when she is washing dishes, chasing grandchildren or chasing the dogs and

---

[2]Although Dr. Winkler, a medical expert who testified at the hearing, disagreed with some of the limitations provided by Dr. Bean, Dr. Winkler offered no specific opinion on whether the EMG nerve conduction study did or did not support Dr. Bean's opinions.

[3]Substernal is defined as "deep to the sternum." (http://www.biology-online.org/dictionary/Substernal, July 12, 2007).

> remains until she lies down.  Usually it will
> resolve within 2-3 minutes if she lies down.

(R. at 248).  Thus, the medical report actually indicates that when she chases the grandchildren or dogs, she has substernal pressure which requires her to lie down to relieve the pain.  The ALJ has misstated the evidence by only mentioning the physical activity, and not discussing the symptoms she suffers when she engages in the activity, or what she has to do to relieve the symptoms.

The ALJ also relied on the fact that plaintiff worked after her alleged onset date of disability to give less than controlling weight to the opinions of Dr. Bean.  Plaintiff had testified that, after her alleged onset date of disability, she worked as a deli clerk at a supermarket for about 5 months, working 4 hours a day, 3-4 days a week (R. at 20, 377-378).  However, the ALJ failed to mention that plaintiff was given a stool at the job to "take breaks as I need" (R. at 378).  The ALJ also failed to mention that plaintiff testified that although they offered her eight hours of work, she told them she could not do eight hours because she would get too sore and tired and could not keep up with the work (R. at 378).  Thus, the evidence of her work attempt is that plaintiff indicated that she was not able to work full-time, and was allowed to take breaks as needed.

Because of the numerous errors by the ALJ in his analysis of the opinions of Dr. Bean, this case will be remanded in order for

13

the ALJ to properly analyze the opinions of Dr. Bean, and determine, what weight, if any, Dr. Bean's opinions should be accorded when determining plaintiff's RFC. The court also finds that the ALJ erred when it determined that Dr. Bean's opinions were not entitled to controlling weight, but then failed to specify what lesser weight, if any, should be accorded to Dr. Bean's opinions. That determination must be made after taking into account the various factors set forth above. The ALJ should also consider plaintiff's activities and work attempt in light of all the evidence of record.

When this case is remanded, the ALJ should keep in mind that when analyzing plaintiff's complaints of pain, the ALJ must consider the possibility that psychological disorders combine with physical problems. <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1021 (10th Cir. 1996); <u>Luna v. Bowen</u>, 834 F.2d 161, 165-166 (10th Cir. 1987). As noted in <u>Winfrey</u>, an ALJ must consider how claimant's depression and anxiety disorder could affect the claimant's perception of pain. <u>Winfrey</u>, 92 F.3d at 1021. In this case, plaintiff's severe impairments included bipolar disorder, depressive disorder and anxiety disorder.

**IV. Should the case be reversed and remanded for further hearing, or reversed for an award of benefits?**

At step five, the burden of proof is on the defendant to produce evidence that the claimant could perform other work in

14

the national economy.  Where the burden is not met, reversal is appropriate.  Harris v. Secretary of Health & Human Services, 821 F.2d 541, 544 (10th Cir. 1987).  When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits.  When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993).  The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion.  Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993).  A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits.  Harris, 821 F.2d at 545; see Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006).  The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

Plaintiff seeks reversal for an award of benefits. That argument is premised on giving controlling weight to the opinions of Dr. Bean. However, evidence in this case includes medical expert testimony by Dr. Winkler, who disagreed with many of the opinions expressed by Dr. Bean regarding plaintiff's limitations (R. at 384-410), and a consultative psychological examination by Dr. Moeller who found that plaintiff could work within the physical restrictions set for her (R. at 277-283, 291-293). Although the ALJ made numerous errors in his analysis of Dr. Bean's opinions, this is not a case in which substantial and uncontradicted evidence in the record as a whole indicates that plaintiff is disabled and entitled to benefits. Therefore, this case shall be remanded for further hearing, including a proper analysis of the opinions of Dr. Bean and all the medical evidence in order to determine if plaintiff is disabled. When considering the various medical opinions, the ALJ should remember that the opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. The ALJ cannot reject the opinion of a treating physician absent a legally sufficient explanation for doing so. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

IT IS THEREFORE RECOMMENDED that the decision of the

Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on July 13, 2007.

                    s/John Thomas Reid
                    JOHN THOMAS REID
                    United States Magistrate Judge